IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
(Electronically Filed)

| | |
|---|---|
| DIPPIN' DOTS, L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:17-CV-  61-GNS |
| ) | |
| TRAVELERS PROPERTY CASUALTY ) | |
| COMPANY OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

# COMPLAINT

For its cause of action against Defendant Travelers Property Casualty Company of America ("Travelers"), Plaintiff Dippin' Dots, L.L.C. ("Dippin' Dots") alleges and states as follows:

**Parties, Jurisdiction and Venue**

1. Dippin' Dots is an Oklahoma limited liability company whose principal place of business is in Paducah, Kentucky. No member of Dippin' Dots is a citizen of Connecticut.

2. Travelers is a Connecticut corporation whose principal place of business is in Hartford, Connecticut.

3. This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## Facts

5. A pioneer in the retail dessert industry, Dippin' Dots makes beads of cryogenically frozen ice cream it markets at retail outlets located in theme parks, malls, fairs, festivals, movie theaters, stadiums, and arenas across the country, as well as online for delivery to customers' homes and/or offices.

6. Referred to as the "ice cream of the future," Dippin' Dots' products are manufactured utilizing a high-tech cryogenic freezing process unique within the industry.

7. Because of their unique characteristics, Dippin' Dots' products must be stored at extremely low temperatures below negative forty degrees (-40°) Fahrenheit.

8. On or about Saturday, November 5, 2016, a circuit breaker that supplies electricity to Dippin' Dots' refrigeration system was tripped.

9. For a period of time after this breaker was tripped, the feed of electricity to Dippin' Dots' refrigeration system was interrupted and the temperature inside the room where Dippin' Dots' products are stored rose.

10. At the time of this incident, Dippin' Dots had systems in place designed to alert relevant personnel of rising temperatures within the room where the company's products are stored.

11. These systems malfunctioned and Dippin' Dots' personnel were unable to take appropriate steps to address the cooling situation until Monday, November 7, 2016.

12. In the interim, Dippin' Dots suffered an irreparable spoliation of product.

13. At all times relevant to this lawsuit, Travelers provided a variety of insurance coverages to Dippin' Dots pursuant to a series of insurance policies.

14. Included among the various insurance policies Dippin' Dots had with Travelers during the relevant time periods were a property and casualty policy (the "Property Policy") and a boiler and machinery policy (the "Boiler Policy").

15. Upon learning of its spoilage losses, Dippin' Dots timely submitted claims to Travelers under both the Property Policy and the Boiler Policy.

16. At the time Dippin' Dots submitted these claims to Travelers, Dippin' Dots and Travelers were involved in litigation related to claims Dippin' Dots had previously submitted to Travelers for other spoliation losses.

17. These previous losses, for which Travelers had paid Dippin' Dots substantial sums of money, were caused by failures of a refrigeration system Dippin' Dots had purchased from Cimco Refrigeration, Inc. ("Cimco"), which had utilized parts sourced from a Finish company known as Vahterus Oy ("Vahterus").

18. After Travelers paid substantial sums of money to Dippin' Dots for these losses, Dippin' Dots initiated a lawsuit against Cimco and Vahterus seeking to recover additional losses that had not been covered by Travelers.

19. Dippin' Dots' lawsuit against Cimco and Vahterus was consolidated with a lawsuit Travelers filed against the same parties wherein Travelers sought to recover sums it had paid to Dippin' Dots under a theory of subrogation.

20. The same week Dippin' Dots submitted the claims to Travelers that are the subject of this lawsuit, Dippin' Dots, Travelers, Cimco, and Vahterus participated in a mediation related to the consolidated lawsuits filed against Cimco and Vahterus by Dippin' Dots and Travelers.

21. In the weeks that followed this mediation, all claims in the consolidated lawsuits ultimately were settled, releases were exchanged, and dismissals were filed with this Court.

22. During this period, Travelers worked with Dippin' Dots and its agents to process the new claims related to the November 5, 2016 incident.

23. During a phone call that occurred in early February of 2017, a representative from Travelers informed a representative from Dippin' Dots that Travelers would be paying Dippin' Dots for the full amount of the company's spoilage losses.

24. According to the Travelers' representative, the only thing left to be determined was whether the payment(s) to Dippin' Dots would come pursuant to the Property Policy or the Boiler Policy.

25. These oral representations of the Travelers' representative were subsequently confirmed in an e-mail.

26. Notwithstanding the assurances provided by the Travelers' representative, during a phone call that was conducted later in February, Travelers reneged on its coverage position and indicated that only a portion of Dippin' Dots' spoilage losses would be covered.

27. Not only is Travelers' coverage position inconsistent with the representations made to Dippin' Dots, it is also inconsistent with the terms of the Property Policy and Boiler Policy, which afford full coverage to Dippin' Dots. Upon information and belief, the radical change in coverage position was based on improper, bad faith, factors and reasons arising out of the payment of prior claims and efforts of Traveler's to improperly terminate Dippin' Dots' coverage.

## COUNT I:  BREACH OF CONTRACT

28. Dippin' Dots incorporates all paragraphs set forth above.

29.  Dippin' Dots and Travelers are parties to the Property Policy and the Boiler Policy.

30.  Travelers has breached the Property Policy and the Boiler Policy by failing to pay all amounts owed to Dippin' Dots under the policies.

31.  Dippin' Dots has been harmed by Travelers' breaches of the policies in an amount to be determined at trial, but which exceeds $75,000.00.

## COUNT II: BREACH OF THE DUTY OF GOOD FAITH

32.  Dippin' Dots incorporates all paragraphs set forth above.

33.  Dippin' Dots provided Travelers with timely notice of the loss suffered in connection with the electric service interruption event that occurred on or about November 5, 2016 by submitting claims to Travelers under both the Property Policy and the Boiler Policy.

34.  Travelers has failed to remit to Dippin' Dots all monies owed to Dippin' Dots under the Property Policy and the Boiler Policy.

35.  Travelers lacks a reasonable basis for failing to remit monies owed to Dippin' Dots under the Property Policy and Boiler Policy.

36.  Travelers has violated the Kentucky Unfair Claims Settlement Practices Act, specifically KRS 304.12-230, and the common law through its bad faith denial of insurance coverage owed to Dippin' Dots.

37.  Dippin' Dots has been harmed by Travelers' breach of the duty of good faith in an amount to be determined at trial, but which exceeds $75,000.00.

38.  Travelers' bad faith, unreasonable denial of coverage warrants the imposition of punitive damages

WHEREFORE, having fully stated its claims against Travelers, Dippin' Dots prays that the Court enter an Order finding Travelers liable on all counts set forth above and awarding to

Dippin' Dots all damages it has shown it has suffered, including punitive damages, as well as all other relief to which it is entitled including, but not limited to its reasonable attorneys' fees and costs. Further, Dippin' Dots demands trial by jury on all issues so triable.

        Respectfully submitted,

        s/ *Michael D. McClintock (by permission)*
        Michael D. McClintock, OBA #18105
        Michael K. Avery, OBA #22476
        McAfee & Taft A Professional Corporation
        Tenth Floor, Two Leadership Square
        211 North Robinson
        Oklahoma City, OK  73102-7103
        Telephone:   (405) 235-9621
        Facsimile:    (405) 235-0439

        AND

        McMURRY & LIVINGSTON, PLLC
        P.O. Box 1700
        Paducah, KY  42002-1700
        Telephone:  (270) 443-6511
        Facsimile:  (270) 443-6548

        BY: s/ Stephen E. Smith, Jr.
            STEPHEN E. SMITH, JR.
            sonny@ml-lawfirm.com

        **ATTORNEYS FOR PLAINTIFF**
        **DIPPIN' DOTS, L.L.C.**