UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-061-TBR-LLK

DIPPIN' DOTS, LLC,                                              PLAINTIFF

v.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA and
CIMCO REFRIGERATION, INC.,                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Cimco Refrigeration, Inc.'s ("CIMCO") Motion for Summary Judgment. [R. 38.] Plaintiff Dippin' Dots responded and CIMCO replied. [R. 47; R. 48.] Fully briefed, this matter is ripe for adjudication. For the reasons stated herein, CIMCO's Motion for Summary Judgment, [R. 38], is **GRANTED**.

**BACKGROUND**

This case revolves around a contract between CIMCO Refrigeration, Inc. and Dippin' Dots, in which CIMCO agreed to "design, construct and install a carbon dioxide and ammonia-based refrigeration system at Dippin' Dots' plant in Paducah, Kentucky" (the "Contract"). [R. 38-2 at 1 (Russell Affidavit); *See generally* R. 38-3 (the Contract).][1] Dippin' Dots manufactures "beads of cryogenically frozen ice cream" that must be stored at temperatures below negative forty degrees Fahrenheit. [R. 26 at 2 (Amended Complaint).] CIMCO designed and installed a refrigeration system to cool the space where Dippin' Dots' products are stored. [*Id*.] The refrigeration system was installed at the Dippin' Dots plant in early 2014. [R. 38-2 at 2.]

---

[1] The relevant portions of the Contract are quoted in the "Discussion" portion of this opinion.

1

On December 21, 2015, Dippin' Dots filed suit against CIMCO and the manufacturer of a "plate and shell" heat exchanger, a specific part of the refrigeration system installed by CIMCO. [*Id*.] That claim asserted that the failure of the heat exchange system caused the refrigeration system to not function properly and become "contaminated." [R. 38-5 at 2-3 (First Amended Complaint of Previous Suit).] As subrogee of Dippin' Dots, Travelers Property Casualty Company of America brought the following claims against CIMCO: (1) breach of contract, (2) breach of the implied warranties of merchantability and fitness for a particular purpose, (3) breach of express warranty, and (4) negligence. [*Id*. at 5-8.] On either November 4 or November 11, 2016, the parties mediated the case and reached a tentative agreement for settlement. [R. 38-1 at 3; R. 47 at 7 (Dippin' Dots Response).] The Settlement Agreement was executed in December of 2016, and the Court dismissed the case on December 6, 2016. [R. 47-3 (Order of Dismissal); R. 38-1 at 5; R. 47 at 8.]

During this period of time, Dippin' Dots experienced yet another issue with its refrigeration system. At this point, further explanation of the refrigeration system and its importance to Dippin' Dots' business is necessary in order to fully understand the claim. This refrigeration system requires two compressors to function, one that operates on carbon dioxide and the other on ammonia. [*Id*. at 2.] As a precaution, CIMCO included an extra compressor of each type to ensure that if there was a problem with either compressor, the system could still operate on the back-up, or "redundant," compressor. [*Id*. at 2-3.] All four compressors are run by a computer called a programmable logic controller ("PLC") that ultimately decides which two compressors are running at any given time. [*Id*.] Dippin' Dots states that CIMCO designed and installed the PLC, and that the PLC was programmed and tested by CIMCO at the time of installation. [*Id*.]

On or around Saturday, November 5, 2016, a circuit breaker associated with one of the compressors was tripped and that compressor ceased operating. [*Id.*] Dippin' Dots explains that, although each compressor has its own circuit breaker, "the PLC did not alert the redundant compressor to begin running when this occurred, causing the refrigeration system not to function." [*Id.*] According to Dippin' Dots' Vice President of Administration and Human Resources, Steve Heisner, this caused the temperature to rise in the refrigerated warehouse and the ultimate spoliation of approximately $750,000.00 worth of product. [R. 16-1 at 2 (Heisner Declaration).] Heisner states that Dippin' Dots learned of this loss on Monday, November 7, 2016, and subsequently filed a claim for insurance coverage with its carrier, Travelers Property Casualty Company ("Travelers"). [*Id.* at 2-3.] Dippin' Dots allegedly has systems in place designed to alert personnel of rising temperatures, however, personnel were never alerted on the day of the incident. [R. 26 at 4.]

Travelers subsequently employed an engineer firm, SEA, Ltd., to investigate the loss. After an inconclusive report on January 12, 2017, [R. 47-5 at 3 (First SEA Report)], SEA concluded in a second report, dated February 13, 2017, that a squirrel on the power line caused Dippin' Dots to experience "a brief interruption in electrical service" of "no more than a few seconds" on November 5, 2016. [R. 47-6 at 2-3 (Second SEA Report).] Two days later, on February 15, 2017, Travelers sent Dippin' Dots a letter informing them that the "Spoilage Coverage Extension" limited Dippin' Dots' recovery to $100,00.00 for its loss of product. [R. 16-6 at 1-2 (Travelers Letter).]

On April 18, 2017, Dippin' Dots filed a complaint against Travelers for breach of contract and breach of the duty of good faith. [R. 1 at 4-5.]

3

On July 18, 2017, an on-site investigation by engineers, retained by Dippin' Dots' counsel, led Dippin' Dots to believe that CIMCO "may be a cause of its loss." [R. 47-7 at 1 (Avery Declaration); R. 47 at 9.] On November 1, 2017, Dippin' Dots filed the Amended Complaint, which added CIMCO as a defendant. [*See generally* R. 26.] Dippin' Dots brings four claims against CIMCO: (1) Breach of Contract, (2) Negligence, (3) Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose, and (4) Breach of Express Warranty. [*Id*. at 7-9.] Currently before the Court is CIMCO's Motion for Summary Judgment, in which it argues that all four claims should be dismissed. [*See generally* R. 38-1.]

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, the defendant must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of

the plaintiff's claims. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the defendant satisfies his or her burden of production, the plaintiff "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## DISCUSSION

CIMCO makes several arguments in support of its Motion for Summary Judgment, including: (1) all of Dippin' Dots' claims are barred by the terms of the Contract, (2) all of Dippin' Dots' claims are barred by the Settlement Agreement, (3) Dippin' Dots' claim of Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose fails as a matter of law, and (4) Dippin' Dots' claim of Breach of Express Warranty fails as a matter of law. [*See generally* R. 38-1.] The Court will address each argument in turn.

As an initial matter, the Court must first address the substantive law to be applied in this case.

### I. Choice of Law

"A federal court sitting in diversity applies the substantive law of the state in which it sits." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). This Court is located in Kentucky, where there is a strong preference for applying Kentucky law. "On at least two occasions, [the Sixth Circuit has] noted this provincial tendency in Kentucky choice-of-law rules." *Wallace Hardware Co. Inc. v. Abrams,* 223 F.3d 382, 391 (6th Cir. 2000) (citing *Adam v. J.B. Hunt Transp., Inc.,* 130 F.3d 219, 230–31 (6th Cir. 1997). The Court need only conduct a choice-of-law analysis if a conflict exists between two states' laws. *Asher v. Unarco Material*

*Handling, Inc.,* 737 F. Supp. 2d 662, 667–68 (E.D. Ky. 2010) (citing *Williams v. Toys "R" Us,* 138 F. App'x 798, 803 (6th Cir. 2005)).

Here, the Contract contains a choice of law provision that states: "This Quotation and *any* resulting contract shall be governed, enforced and construed in accordance with the laws of the State of New York without regard to that state's rules governing conflict of laws." [R. 38-3 at 19.] However, there is no conflict of laws between that of New York and Kentucky regarding a contractual limitation on liability and damages because both states have adopted §2-719 of the Uniform Commercial Code. *See* Ky. Rev. Stat. Ann. § 355.2-719; N.Y. U.C.C. Law § 2-719. Thus, the Court will apply Kentucky law. *See Asher*, 737 F. Supp. 2d at 667-68.[2]

## II.  Whether the Terms of the Contract Bar Dippin' Dots' Claims

CIMCO argues that Dippin' Dots' Complaint should be dismissed in its entirety pursuant to §§ 6 and 7 of the Contract. [R. 38-1 at 12.] Dippin' Dots disagrees.

Sections 6 and 7 of the Contract provide:

6. **WARRANTY** • UNLESS OTHERWISE SPECIFIED IN THIS QUOTATION/CONTRACT, THE VENDOR AGREES TO WARRANT THE GOODS AND INSTALLATION SOLD HEREUNDER AGAINST ORIGINAL DEFECTS IN MANUFACTURE AND WORKMANSHIP FOR A PERIOD OF ONE YEAR FROM COMPLETION AS DEFINED IN SECTION 9 OF THESE TERMS AND CONDITIONS. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, STATUTORY OR OTHERWISE, EXPRESS OR IMPLIED, OF EITHER MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE TERMS OF THE VENDORS WARRANTY ARE AS FOLLOWS:

> (a) In respect of goods sold without installation, the Vendor's sole responsibility shall be to repair or replace at the Vendor's option. F.O.B. point of manufacture, any defective goods or parts thereof.
>
> (b) In respect of goods sold with installation, the Vendor's sole responsibility shall be to repair or replace, at the Vendor's option, any defective goods or parts thereof or any defective workmanship. The

---

[2] The Court notes that despite CIMCO briefly mentioning the choice of law provision in its Motion for Summary Judgment, [R. 38-1 at 12n. 20], the parties do not argue whether one state's law should be applied over the other.

6

> Vendor shall be responsible for all of its costs in connection therewith other than the out-of-pocket expense incurred by the Vendor's employees and agents travelling from the Vender's nearest place of business to the jobsite and charges for labour performed after normal working hours at the request of the Purchaser, which latter expenses and charges shall be for the account of the purchase;
>
> (c) The Vendor warrants goods not of the Vendor's manufacture only to the extent to which the Vendor is able to enforce a claim for liability against the manufacturer thereof.
>
> (d) The purchaser shall promptly give written notice to the Vendor after the discovery of the apparent defect.
>
> (e) As a condition precedent to any liability by the Vender hereunder, the Purchaser shall use, operate and maintain the goods and related systems in a careful, prudent and reasonable manner, and in conformity with the Vendor's and/or the manufacturers' instructions.
>
> (f) THE FOREGOING CONSTITUTES THE VENDOR'S SOLE LIABILITY ARISING OUT OF THE DESIGN, MANUFACTURE, SALE, INSTALLATION, OR USE OF THE GOODS.
>
> (g) This warranty shall be void if the Purchaser is in default under the terms of the payment of this contract.
>
> 7. The Vendor shall not be liable for damages, whether direct, indirect, special or consequential, arising out of the goods, or the installation, operation, or failure of operation of the goods or related systems.

[R. 38-3 at 18-19.] CIMCO asserts that these sections of the Contract operate as a "limitation on liability and damages Dippin' Dots is permitted to recover," which are authorized by Kentucky law. [R. 38-1 at 12.] Kentucky Revised Statute ("KRS") § 355.2-719(1)(a) states:

> (a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts . . ..

Ky. Rev. Stat. Ann. § 355.2-719(1)(a). CIMCO argues that the language of the Contract limits CIMCO's sole liability arising out of the design, manufacture, sale, installation, or use of the

7

goods to the cost of repair or replacement. [R. 38-1 at 12-13; R. 48 at 8.] CIMCO concludes that Dippin' Dots claims were brought outside the one-year warranty period wherein CIMCO was required to repair or replace parts and, therefore, should be dismissed. [*Id*.]

In response, Dippin' Dots argues that even if § 7 of the Contract bars consequential damages, as suggested by CIMCO, Dippin' Dots would still be entitled to other relief, "including but not limited to repairs of or replacements [of] defective items and/or the costs associated with the same or, in the event this remedy were deemed to fail of its essential purpose, the actual damages Dippin' Dots has suffered." [R. 47 at 19.] Dippin' Dots asserts that the one-year warranty in the Contract does not bar its claim for repair or replacement of defective items because the warranty failed its essential purpose. [*Id.* at 21.]

KRS §355.2-719(2) provides: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter." Ky. Rev. Stat. Ann. § 355.2-719(2). This district has previously stated on the matter:

> A remedy does not "fail of its essential purpose" simply because it limits the recovery of a particular relief sought. A limitation of remedy provision fails of its essential purpose when it deprives a party of the substantial value of its bargain. For example, the "failure of essential purpose" exception best applies to situations where the contract limits liability to repair or replacement of a product and that product is in a condition where the defect cannot be fully corrected by the repair or replacement of the defective part or product.

*Gooch v. E.I. Dupont De Nemours & Co.*, 40 F. Supp. 2d 863, 870 (W.D. Ky. 1999) (citing *Rudd Constr. Equip. Co. v. Clark Equip. Co.,* 735 F.2d 974, 982 (6th Cir. 1984); *Ford Motor Co. v. Mayes,* Ky. App., 575 S.W.2d 480, 484 (1978); *Middletown Eng'g Co. v. Climate Conditioning Co.,* Ky. App., 810 S.W.2d 57, 59 (1991); *Carboline Co. v. Oxmoor Ctr.,* No. 84-C-48-MR,

1985 WL 185466 (Ky. Ct. App. Apr. 5, 1985); DAVID J. LEIBSON & RICHARD H. NOWKA, THE UNIFORM COMMERCIAL CODE OF KENTUCKY § 2.6(G) (2d ed.1992) (internal citation omitted)).[3]

Specifically, Dippin' Dots claims that the warranty failed its essential purpose because there was a latent defect in the compressors that was not reasonably discoverable during the one-year warranty period. [R. 47 at 21.] Dippin' Dots does not describe this specific defect or explain why it was not discoverable, but it insists that there is "at a minimum, a fact question" that requires the Court to deny summary judgment. [*Id*.] In support of its argument, Dippin' Dots cites to two cases without any explanation as to how the case law relates to the situation at hand. [*Id*.] Moreover, neither case applies Kentucky or New York law. [*Id*.] In the first case, *Marr Enterprises, Inc. v. Lewis Refrigeration Co.*, Marr Enterprises brought suit against Lewis Refrigeration for breach of contract and negligence when a refrigeration system it purchased from Lewis Refrigeration for keeping fish cold on its fishing vessel did not work properly. 556 F.2d 951, 953 (9th Cir. 1977). Marr Enterprises argued that the contract failed its essential purpose due to a latent defect in the refrigeration system. *Id*. at 955. However, the Ninth Circuit Court of Appeals held that Marr failed to present a genuine issue of material fact on the matter because "[t]here is no indication that the defect was latent. Rather, the system never worked properly." *Id*. As this case presents a situation in which the court reached the opposite conclusion

---

[3] Some additional, illustrative examples of the use of this exception can be found in the Hawkland Uniform Commercial Code Series:

> For example, if the limited remedy is a replacement of defective parts, but the defective part caused a complete destruction of the entire good, the replacement of the defective part is of no use to the buyer and was not a limited remedy designed to compensate the buyer for the loss of the entire good. Another example is a repair or replacement exclusive limited remedy that is not designed to remedy harm caused by the seller's delay in delivery. In these types of circumstances, the court may find that the agreed exclusive remedy fails of its essential purpose or that the limited exclusive remedy does not provide the "fair quantum of remedy."

WILLIAM D. HAWKLAND ET AL, UNIFORM COMMERCIAL CODE SERIES § 2-719:3 (2018).

of what Dippin' Dots requests, the Court finds that it hinders rather than supports Dippin' Dots' argument.

Dippin' Dots also cites to *Cox v. Lewiston Grain Growers, Inc.*, in which a farmer, Cox, sued a seed company, Lewiston Grain Growers, over a seed he purchased that failed to produce a crop. 86 Wash. App. 357, 361 (1997). Although Cox was told that the seed was certified, i.e., had a germination rate of at least eighty-five percent, the seed was not certified, and the fields planted with that particular seed were deemed "total losses." *Id*. at 362-64. In fact, Cox sent the seeds to Washington State University for analysis where it was revealed that the germination rate of the seed was far below the eighty-five percent required for certification and there was "extensive seed damage to the seed coat which adversely affected germination." *Id*. at 364. The Court of Appeals of Washington held: "Here, the defect was in the germination level of the seed. The seed was sold as certified, but it did not meet threshold germination requirements. Mr. Cox could not have discovered this until he planted the seed and it did not produce an adequate crop. Thus, the remedy would fail its essential purpose." *Id*. at 370. Unlike *Cox*, Dippin' Dots provides no evidence of a defect in the compressors nor does it explain why it could not discover the alleged defect within a year.

In retort, CIMCO cites to the findings of the Western District of Kentucky in *Gooch v. E.I. Dupont De Nemours & Co.*, in which a farming company, Gooch, sued an herbicide manufacturer, Du Pont, over damage to the company's corn crop alleging strict liability, negligence, and breach of express and implied warranty. The label of the herbicide contained a "Limitation of Warranty and Liability" which stated: "IN NO EVENT SHALL DUPONT OR SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES RESULTING FROM THE USE OR HANDLING OF THIS PRODUCT." *Gooch*,

40 F. Supp. 2d at 866. Furthermore, the warranty limited damages to recovery of the purchase price of the herbicide or replacement of the product. *Id*. The court held that this limitation of damages clause did not fail of its essential purpose, stating that "[a] remedy does not 'fail of its essential purpose' simply because it limits the recovery of a particular relief sought," and that the situation at hand was not the type to which the failure of essential purpose was best applied—i.e., "where the contract limits liability to repair or replacement of a product and that product is in a condition where the defect cannot be fully corrected by the repair or replacement of the defective part or product." *Id*. at 870. Like the plaintiff in *Gooch*, CIMCO argues that Dippin' Dots should be held to the disclaimer of warranties in the Contract. [R. 48 at 17-18.] Furthermore, CIMCO emphasizes that Dippin' Dots has not developed its argument that the one-year warranty failed of its essential purpose or presented any affirmative evidence in support of such an argument. [*Id*. at 18.]

The Court finds that § 7 of the Contract excludes consequential damages, as permitted under Kentucky law. According to the Supreme Court of Kentucky, "the construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (citation omitted). When a written contract is unambiguous, it "will be enforced strictly according to its terms." *Frear,* 103 S.W.3d at 106 (quoting *O'Bryan v. Massey–Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966)). Here, § 7 explicitly states: "The Vendor shall not be liable for damages, whether direct, indirect, special or *consequential* . . .." [R. 38-3 at 18-19.] Thus, the Court finds that CIMCO is not liable for consequential damages according to the Contract agreed upon by both parties. *See, e.g., Carboline Co. v. Oxmoor Ctr.*, No. 84-C-48-MR, 1985 WL 185466 (Ky. Ct. App. Apr. 5, 1985) (holding that the exclusion of liability for consequential damages in a

contract between sophisticated parties was valid); Ky. Rev. Stat. Ann. § 355.2-719(3) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable").[4]

Furthermore, the Court finds that the one-year warranty of the Contract limited relief to repair or replacement of parts within that time period, and Dippin' Dots has not presented a genuine dispute of material fact over whether the one-year warranty failed of its essential purpose. CIMCO satisfied its burden of production at the summary judgment stage by providing evidence that it limited damages and liability to a one-year warranty for repair or replacement of parts, as permitted under Kentucky law. [*See* R. 38-1 at 12-13; R. 48 at 6-7 (citing §§ 6 and 7 of the Contract).] In addition, CIMCO highlighted the fact that Dippin' Dots failed to present evidence that there was a latent defect present that could not have been discovered and repaired within the one-year warranty period. [R. 48 at 18.] As this district stated in *Gooch*, "the 'failure of essential purpose' exception best applies to situations where the contract limits liability to repair or replacement of a product and that product is in a condition where the defect cannot be fully corrected by the repair or replacement of the defective part or product." 40 F. Supp. 2d at 870. Here, Dippin' Dots and CIMCO entered a contract that limited CIMCO's liability to repair or replacement of the refrigeration system. After CIMCO satisfied its burden of production concerning the limitations within the Contract, Dippin' Dots failed to present evidence showing a defect in the compressors or explaining why the defect could not be fully corrected by repair or replacement of a part or the product itself. *See Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324). Thus, the Court finds that the matter at hand is not an appropriate situation for applying the failure of essential purpose exception. Although the Court understands that Dippin'

---

[4] The Court notes that Dippin' Dots does not argue that the contractual limitation on consequential damages is unconscionable.

Dots suffered a loss of its frozen ice cream, "[a] remedy does not 'fail of its essential purpose' simply because it limits the recovery of a particular relief sought." *Gooch*, 40 F. Supp. 2d at 870.

Dippin' Dots also argues that the exclusion of consequential damages in the Contract "does not bar the recovery of consequential damages for claims of negligence" because the limitation in § 7 of the Contract does not "expressly reference exculpation for damages suffered as a result of negligence." [R. 47 at 19-20.] Dippin' Dots cites to case law from the Tennessee Court of Appeals and Kansas Appellate Court for support—neither of which is applicable law in this matter. [*Id*. at 20.] Moreover, Dippin' Dots offers no argument or explanation as to why these cases should be applied to the situation at hand. In contrast, CIMCO cites to the Eastern District of Kentucky, applying Kentucky law, which held in *United States Achievement Academy, LLC v. Pitney Bowes, Inc.* that the plaintiff was precluded from seeking consequential, incidental, or punitive damages on fraud and negligent misrepresentation claims pursuant to the warranty in the lease agreement between the parties. *See* 458 F. Supp. 2d 389, 399 (E.D. Ky. 2006). Like § 7 of the Contract, the agreement in *United States Achievement Academy* did not contain an express reference to damages suffered as a result of negligence. *Id*. Additionally, the Western District of Kentucky has previously stated: "Under Kentucky law, a plaintiff must elect whether to proceed in contract or in tort for claims arising from the same factual circumstances." *Ronald A. Chisholm, Ltd. v. Am. Cold Storage, Inc.*, No. 3:09-CV-00808-CRS, 2013 WL 2242648, at *10 (W.D. Ky. May 21, 2013) (citing *Cincinnati N.O. & T.P. Ry. Co. v. Dority*, 166 S.W.2d 996, 996 (Ky. 1942)). Here, both the contract and negligence claims arise out of CIMCO's alleged failure to "design and/or install a properly programmed PLC." [R. 26 at 7-8:

52, 57.][5] Therefore, the Court finds that the Contract agreed upon between Dippin' Dots and CIMCO bars recovery of consequential damages for claims of negligence.

In summary, the Court finds that the terms of the Contract between Dippin' Dots and CIMCO bar Dippin' Dots' claims. Thus, CIMCO's Motion for Summary Judgment, [R. 38], is **GRANTED**.

### III. Arguments Regarding the Settlement Agreement and the Implied and Express Warranties

As the Court has already found that the terms of the Contract between Dippin' Dots and CIMCO bars Dippin' Dots' claims, the Court finds it unnecessary to rule on CIMCO's arguments regarding the Settlement Agreement, Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose, and Breach of Express Warranty.[6]

### CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**: CIMCO's Motion for Summary Judgment, [R. 38], is **GRANTED**. All claims against CIMCO are **DISMISSED** and the Clerk of Court is **DIRECTED** to terminate Defendant CIMCO from this action.

**IT IS SO ORDERED**.

Thomas B. Russell, Senior Judge
United States District Court

cc: Counsel of Record

November 5, 2018

---

[5] The Court also notes that the negligence count in Dippin' Dots' Amended Complaint states: "Dippin' Dots has been damaged by this *breach of contract* in an amount to be determined at trial, but which exceeds $75,000." [R. 26 at 8 (emphasis added).]

[6] Although the issue is not disputed in Dippin' Dots' Response, the Court notes that the warranty disclaimer for express or implied warranties found in the Contract contains the appropriate language and it conspicuously appears on the agreement. *See Gooch*, 40 F. Supp. 2d at 868-69; *see also* Ky. Rev. Stat. Ann. § 355.2-316(2) ("[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous").